## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

In re:

Bryant Portable Welding, Inc.,

Debtor.

Chapter 11, Subchapter V
Case No. 23-30416

## FIRST AMENDED PLAN OF REORGANIZATION
## UNDER SUBCHAPTER V OF CHAPTER 11

## ARTICLE 1: SUMMARY

A.  Summary of Plan

This chapter 11 plan of reorganization (the "Plan") proposes to pay creditors of Bryant Portable Welding, Inc. ("Debtor") with all of the projected disposable income of the Debtor for a sixty-month period. The Plan has five secured classes, one unsecured class, and one class for equity interests. As required by the Bankruptcy Code, this Plan provides for full payment of administrative claims.  There are no other priority claims.

Each creditor should thoroughly read this Plan for an explanation of the precise treatment of the applicable claims. **Please read all sections carefully and discuss them with your attorney, as your rights may be affected. If you do not have an attorney, you should consult with one.**

The Debtor strongly encourages all creditors to vote in favor of the Plan.  The Plan is in the best interests of creditors because the Debtor's continued operations will generate cash flow for distribution to creditors.  The alternative to confirmation of the Plan, and distribution of the payments required under the Plan, is a chapter 7 liquidation.  The liquidation analysis attached as Exhibit A, demonstrates that unsecured creditors will receive more under the proposed plan than they would under a chapter 7 bankruptcy liquidation.

The Debtor's cashflow projections are attached as Exhibit B, and these projections confirm that the Debtor generates sufficient cash flow to fund the payments due under the Plan. For historical revenue, expenses, and net income, the Debtor sets forth the 2021, 2022, and 2023 financial numbers on Exhibit C. When reviewing Exhibit C, note that, beginning in September 2023, the Debtor has transitioned its business to that of an equipment lessor, which is expected to remove the losses from general contracting.

B.  <u>History of the Debtor</u>

The Debtor was organized as a North Dakota corporation on February 12, 2013. Through 2021, the Debtor operated as a one-man shop performing welding, roustabout, and maintenance work. In the 4th quarter of 2021, the Debtor began to take on projects with general contractor responsibilities, offering project management along with an expanded set of services which required the acquisition of additional equipment, the purchase of materials and the subcontracting of services. As a result of customer delays, project costs rose and cash flow was compromised. All general contracting and project management work ceased by September, 2023. Since that time, the Debtor has transitioned its business to that of an equipment lessor with equipment leased through Chief Oilfield Services, LLC. The Debtor has no employees. The Debtor intends to remain as an equipment lessor through the term of its Plan of Reorganization.

The Debtor's business is operated by Tamara and Roy Bryant. Both are actively involved in overseeing the operations of the Debtor but neither intends on taking a salary during the term of the Plan. The Debtor does not anticipate adding any employees in the foreseeable future. While Roy Bryant does not intend on taking a salary, the Debtor is an S-Corp and, as a result, he recognizes income for tax purposes and anticipates taking a distribution to pay the income tax liability derived from the Debtor.

The home of Tamara and Roy Bryant is the Debtor's primary office location. The Debtor will pay no rent for this office location or any other location during the term of the Plan.

Bravera Bank, f/k/a American Bank Center, commenced a lawsuit whereby it sought to foreclose upon substantially all the Debtor's assets. These actions necessitated the Debtor to seek bankruptcy protection. On November 16, 2023 (the "Petition Date"), the Debtor filed a petition for relief pursuant to subchapter V of Chapter 11 of Title 11 of the United States Code (the "Code"). Had it not done so, the Debtor would have been put out of business. The Debtor filed this bankruptcy case to preserve the going concern value, protect unsecured creditors, and restructure its liabilities in accordance with the provisions of the Bankruptcy Code. The Debtor believes it can once again be a viable company if this Plan is approved.

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

Class 1 is the Secured Claim of Bravera Bank f/k/a American Bank Center. Class 1 is impaired and entitled to vote.

Class 2 is the Secured Claim of John Deere. Class 2 is impaired and entitled to vote.

Class 3 is the Secured Claim of Kubota. Class 3 is impaired and entitled to vote.

Class 4 is the Secured Claim of Wells Fargo. Class 4 is impaired and entitled to

vote.

Class 5 is the Secured Claim of Ally. Class 5 is impaired and entitled to vote.

Class 6 consists of the allowed general unsecured claims against the Debtor. Class 6 is impaired and entitled to vote.

Class 7 consists of all allowed equity interests in the Debtor. Class 7 is unimpaired and not entitled to vote.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND COURT FEES

3.1 <u>Unclassified Claims.</u> Pursuant to section 1123(a)(1), this Plan has not included Administrative Expenses or Priority Tax Claims within any Class.

3.2 <u>Priority Tax and Wage Claims.</u> There are no priority tax or wage claims.

3.3 <u>Administrative Expenses:</u> Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. The Debtor believes there are no unpaid administrative expense claims that are past due.

3.4 <u>Professional Fees.</u> The Debtor's attorneys and the Subchapter V Trustee, Thomas Kapusta may submit a final application for compensation and reimbursement of expenses following entry of the confirmation order in this case and the Debtor shall promptly begin payment of any Professional Fees that are allowed by the court. The Debtor estimates its attorney's fees to be paid post-confirmation to be $15,000 in addition to the retainer paid pre-petition. The Debtor has paid a $6,000 retainer to the Subchapter V Trustee as approved by the Court's order. All post-confirmation professional fees will be set off against the periodic payments otherwise payable to the General Unsecured Creditors (Class 6 Claims). The professional fees shall be paid in full before any Class 6 Claims are paid. If the plan is confirmed non-consensually, the post-confirmation fees of the Subchapter V Trustee shall be subject to approval by the Court pursuant to 11 U.S.C. § 503(b). Upon Court approval of any post-confirmation fees, the Debtor will pay the approved expense as soon as reasonably possible in the ordinary course of business, unless otherwise agreed.

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS

**Class 1: Secured Claim of Bravera Bank f/k/a American Bank Center.** The Class 1 Claim, with a balance of $209,100 will be paid in full, with an annual interest rate of 5.75%, based on sixty (60) equal principal and interest payments of $4,018.23 per month beginning March 1, 2024.

| Collateral | Value | Secured Debt | Monthly | Interest | Term |
|---|---|---|---|---|---|
| 2021 F350 4X4 CRW CC VIN FD8W3HT6MED98515 | 43,000 | | | | |
| 2021 F550 4X4 CRW CC VIN 1FD0W5HT7MED98497 | 56,000 | | | | |
| 2019 Ford Commercial F450 VIN 1FD0W4HT2KED43513 | 30,000 | | | | |
| 2022 Ford F550 VIN 1 VIN FD0W5HTXNEC70675 | 57,900 | | | | |
| 2021 Maxxd 14'x 83" Dump Trailer 7K Axles Slide in ramps VIN 5R8BD1429MM083675 | 10,000 | | | | |
| Diamond HDT207L22X82 Diamond C 22' x 82" HDT 3/4 Tilt Trailer 46UFU2227M1248777 | 5,500 | | | | |
| Legend MFG 7'x18" Enclosed Trailer VIN 1L9BE1825N1317810 | 6,700 | | | | |
| Total | 209,100 | 209,100 | 4,018.23 | 5.75% | 60 months beginning 03/01/24 |

Other than as specifically modified by the Plan, the terms of the debt, security, and perfection documents executed by the Debtor in favor of Bravera Bank will remain unaltered and fully enforceable. Bravera Bank shall retain its lien in the collateral.

Debtor shall maintain insurance on the collateral with deductibles consistent with those carried historically, with Bravera Bank named as loss payee, insuring the collateral for its full, insurable value against perils. Debtor will provide Bravera Bank with acceptable proof of insurance coverage upon request.

Any failure by the Debtor to make payment or provide proof of insurance that is not cured within 20-days of the date written notice of default is provided by Bravera Bank will allow Bravera Bank to submit an affidavit of default to the United States Bankruptcy Court for the District of North Dakota, whereupon the Court will enter its order granting Bravera Bank relief from the stay so as to allow Bravera Bank to exercise its contract and state law remedies to foreclose against, recover, and dispose of the Collateral.

Class 1 is impaired and entitled to vote to accept or reject the Plan.

**Class 2: Secured Claim of John Deere Construction & Forestry Company ("John Deere").** The Class 2 Claim, with a balance of $162,692 will be paid in full, with an annual interest rate of 8.50%, based on sixty (60) equal principal and interest payments of $3,337.88 per month beginning April 1, 2024.

| Collateral | Value | Secured Debt | Monthly | Interest | Term |
|---|---|---|---|---|---|
| John Deere 12K Telehandler 2022 VIN: DL1240CN51915 | 162,692 | 162,692 | 3,337.88 | 8.50% | 60 months beginning 04/01/24 |
| John Deere 375 Air Compressor 2022 VIN: 201904240090 | | | | | |
| John Deere 750R Post Driver 2022 VIN: JCAJD1368-0820R3620 | | | | | |

The secured debt is based on the value of the collateral, as set out in John Deere's proof of claim.

Other than as specifically modified by the Plan, the terms of the debt, security, and perfection documents executed by the Debtor in favor of John Deere will remain unaltered and fully enforceable. John Deere shall retain its lien in the collateral.

Debtor shall maintain insurance on the collateral with deductibles consistent with those carried historically, with John Deere named as loss payee, insuring the collateral for its full, insurable value against perils. Debtor will provide John Deere with acceptable proof of insurance coverage upon request.

Any failure by the Debtor to make payment or provide proof of insurance that is not cured within 20-days of the date written notice of default is provided by John Deere will allow John Deere to submit an affidavit of default to the United States Bankruptcy Court for the District of North Dakota, whereupon the Court will enter its order granting John Deere relief from the stay so as to allow John Deere to exercise its contract and state law remedies to foreclose against, recover, and dispose of the Collateral.

Class 2 is impaired and entitled to vote to accept or reject the Plan.

**Class 3: Secured Claim of Kubota Credit Corporation ("Kubota").** The Class 3 Claim, with a secured balance of $142,373.46 will be paid in full, with an annual interest rate of 5.50%, based on sixty (60) equal principal and interest payments of $2,719.50 per month beginning June 1, 2024.

| Collateral | Value | Secured Debt | Monthly | Interest | Term |
|---|---|---|---|---|---|
| Diamond C Trailer MAX312HDT40X102 VIN: 46UFU4032PI268527 | 48,836.92 | 48,836.92 | | | |
| Kubota AP-PFL4548, 1040468K Kubota SVL75-2HFWC, 38322 | 8,131.43 | 8,131.43 | | | |
| Kubota SVL75-2HFWC, KBCZ052CLN1H69839 Land Pride AP-HD74LLC, 2055810 Land Pride AP-PFL4648 , 1122397K | 72,244.94 | 72,244.94 | | | |

| | | | | | |
|---|---|---|---|---|---|
| Land Pride AP-SC4072 , 1127181K Kubota M9247 | | | | | |
| Kubota B2601HSD-1, 66765 Kubota LA435, A4674 Kubota RCK60-32 , 19093 Land Pride RCR1260 , 1441842 Land Pride RTR1258 , 1577423 | 13,160.17 | 13,160.17 | | | |
| Total | 142,373.46 | 142,373.46 | 2,719.50 | 5.50% | 60 months beginning 06/01/24 |

The secured debt is based on the value of the collateral, as set out in Kubota's proof of claim.

Other than as specifically modified by the Plan, the terms of the debt, security, and perfection documents executed by the Debtor in favor of Kubota will remain unaltered and fully enforceable. Kubota shall retain its lien in the collateral.

Debtor shall maintain insurance on the collateral with deductibles consistent with those carried historically, with Kubota named as loss payee, insuring the collateral for its full, insurable value against perils. Debtor will provide Kubota with acceptable proof of insurance coverage upon request.

Any failure by the Debtor to make payment or provide proof of insurance that is not cured within 20-days of the date written notice of default is provided by Kubota will allow Kubota to submit an affidavit of default to the United States Bankruptcy Court for the District of North Dakota, whereupon the Court will enter its order granting Kubota relief from the stay so as to allow Kubota to exercise its contract and state law remedies to foreclose against, recover, and dispose of the Collateral.

Class 3 is impaired and entitled to vote to accept or reject the Plan.

**Class 4: Secured Claim of Wells Fargo Bank, N.A. ("Wells Fargo")** The Class 4 Claim, with a secured balance of $7,500 will be paid in full, with an annual interest rate of 5.50%, based on sixty (60) equal principal and interest payments of $143.26 per month beginning June 1, 2024.

| Collateral | Value | Secured Debt | Monthly | Interest | Term |
|---|---|---|---|---|---|
| Miller Welder Model, Big Blue 400 SN# 907805001 Miller Wire Feeder, Model ArcReach SN# 951729 | 7,500 | 7,500 | 143.26 | 5.50% | 60 months beginning 06/01/24 |

The secured debt is based on the value of the collateral, as set out in Wells Fargo's proof of claim.

Other than as specifically modified by the Plan, the terms of the debt, security, and perfection documents executed by the Debtor in favor of Wells Fargo will remain unaltered and fully enforceable. Wells Fargo shall retain its lien in the collateral.

Debtor shall maintain insurance on the collateral with deductibles consistent with those carried historically, with Wells Fargo named as loss payee, insuring the collateral for its full, insurable value against perils. Debtor will provide Wells Fargo with acceptable proof of insurance coverage upon request.

Any failure by the Debtor to make payment or provide proof of insurance that is not cured within 20-days of the date written notice of default is provided by Wells Fargo will allow Wells Fargo to submit an affidavit of default to the United States Bankruptcy Court for the District of North Dakota, whereupon the Court will enter its order granting Wells Fargo relief from the stay so as to allow Wells Fargo to exercise its contract and state law remedies to foreclose against, recover, and dispose of the Collateral.

Class 4 is impaired and entitled to vote to accept or reject the Plan.

**Class 5: Secured Claim of Ally Bank ("Ally").** The Class 5 Claim, with a secured balance of $52,000 will be paid in full, with an annual interest rate of 6.7%, based on sixty (60) equal principal and interest payments of $1,022.32 per month beginning June 1, 2024.

| Collateral | Value | Secured Debt | Monthly | Interest | Term |
|---|---|---|---|---|---|
| 2019 Ford F-250 Super Duty Crew Cab Lariat 4WD 6.2L V8 VIN:1FT7W2B62KEE48420 | 52,000 | 52,000 | 1,022.32 | 6.7% | 60 months beginning 06/01/24 |

Other than as specifically modified by the Plan, the terms of the debt, security, and perfection documents executed by the Debtor in favor of Ally will remain unaltered and fully enforceable. Ally shall retain its lien in the collateral.

Debtor shall maintain insurance on the collateral with deductibles consistent with those carried historically, with Ally named as loss payee, insuring the collateral for its full, insurable value against perils. Debtor will provide Ally with acceptable proof of insurance coverage upon request.

Any failure by the Debtor to make payment or provide proof of insurance that is not cured within 20-days of the date written notice of default is provided by Ally will allow Ally to submit an affidavit of default to the United States Bankruptcy Court for the District of North Dakota, whereupon the Court will enter its order granting Ally relief from the stay so as to allow Ally to exercise its contract and state law remedies to foreclose against, recover, and dispose of the Collateral.

Class 5 is impaired and entitled to vote to accept or reject the Plan.

**Class 6: Allowed General Unsecured Claims.**  "General Unsecured Claims" are not secured by property of the estate and not entitled to priority under Section 507 of the Code.  As of the date hereof, the Debtor estimates the total pool of allowed general unsecured claims to be approximately $1,505,626.40, consisting of the following creditors:

| | |
|---|---:|
| Ally Bank | 12,405.00 |
| Arrow Electric Inc. | 90,275.01 |
| Axiom Medical Consulting | 300.00 |
| Black Olive Capital | 294,750.00 |
| BPS Supply Group | 79,141.59 |
| Brand SafWay | 58,730.00 |
| Braun Intertec Corporation | 4,500.00 |
| Circle T Transportation | 4,833.62 |
| Desert NDT | 14,511.00 |
| EquipmentShare Inc | 8,169.77 |
| G&G Garbage | 8,242.50 |
| Hose and Rubber | 1,622.60 |
| John Deere Construction & Forestry Company | 11,328.82 |
| Kubota Credit Corporation | 11,537.22 |
| Kubota Credit Corporation | 16,018.69 |
| Leonbro Inspection | 874.00 |
| Linde | 8,922.65 |
| Performance NDT Services, LLC | 57,101.00 |
| ProLift Rigging Co | 54,753.98 |
| RDO Equipment Co. | 4,931.23 |
| Seville Industries, Inc. | 100,000.00 |
| Sherwin–Williams Company | 7,239.87 |
| Targa Badlands LLC | 450,000.00 |
| TCI Factoring | 27,190.11 |
| Tenet Corp | 8,351.10 |
| Trinity Health | 1,333.00 |
| United Rentals (North America), Inc. | 38,424.52 |
| Vox Funding, LLC | 102,190.88 |
| Wells Fargo Bank, N.A. | 2,554.61 |
| WEX Fuel Cards | 22,018.63 |
| Total | |
| | 1,502,251.40 |

Debtor reserves the right to dispute any of the above claims pursuant to the procedure set forth in Article 5. In full satisfaction of all undisputed or allowed claims, each Holder of a Class 6 claim shall receive its pro rata share of $100,000 less projected professional fees over the length of this Plan. Payments to the general unsecured creditors will commence on December 1, 2024 and will continue every six months (payments on June 1 and December 1 of each year) with the 10th and final payment on June 1, 2029. Each

payment will be in the amount of $10,000; provided, however, professional fees shall be paid in full before any Class 6 Claims are paid. See Section 3.4 of this Plan.

The percentage payment to each Class 6 creditor is approximately 5.6% ($100,000 less projected professional fees of $15,000 paid through the plan, divided by $1,502,251.40).

Class 6 is impaired and entitled to vote to accept or reject the Plan.

**Class 7: Equity Interests.**  Equity interest holders are parties who hold an ownership interest in the Debtor.  The sole member of Class 3 is Roy Jeffrey Bryant who holds a 100% interest in the Debtor. Mr. Bryant shall retain his equity interest in the Debtor on the Effective Date.

Class 7 is unimpaired and deemed to accept the Plan.

## ARTICLE 5: ALLOWANCE OR DISALLOWANCE OF CLAIMS.

5.1    Disputed Claims. A "Disputed Claim" shall mean a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (b) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2    Payments and Distributions with Respect to Disputed Claims: No payments or distributions will be made on a disputed claim until such claim has been allowed by a final, non-appealable order. If there is a disputed claim, the value of any disputed claimant's distribution will be held until the dispute is resolved. If the claim is resolved in whole or in part in favor of the claimant, the applicable portion of the held funds will be paid to the claimant. The remaining portion of the held funds will be paid to other Class 6 creditors along with the next regularly scheduled payment.

5.3    Settlement of Disputed Claims:  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 6: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

At the time of filing, the Debtor had month-to-month leases with Chief Oilfield Services, LLC, 3197 111 E. Ave. SW, Suite 1, Dickinson, ND 58601, with respect to the following equipment:

     i.    Hi Flow Cab & 2022 Skidsteer,

    ii.    DL-12 Telehandler,

   iii.    2022 Diamond C Trailer,

  iv.  2021 Diamond C Tilt trailer,

  v.  2021 Maxx D Trailer,

  vi.  2018 Ford F150,

  vii.  2019 Ford F250,

  viii.  2019 Ford F450,

  ix.  2021 Ford F350,

  x.  2022 Ford F550,

All secured claims, as described herein, shall be deemed to be perfected. The Debtor shall obtain new leases, including new leases for the equipment described above in this Article VI, with substantially the following clause:

> Lessee acknowledges and agrees that the equipment subject to this lease agreement (the "Equipment") is subject to a perfected security interest held by one or more secured parties as shown by UCC filings with the Secretary of State for the State of North Dakota (the "Secured Party"). Lessee further acknowledges that the Secured Party's security interest in the Equipment is senior and superior to any interest or right Lessee may have in the Equipment. Lessee irrevocably authorizes the Secured Party, at any time, to file financing statement(s) against Lessee which describe the Equipment.  In the event of enforcement of the security interest by the Secured Party, Lessee agrees to cooperate fully with the Secured Party in the peaceful surrender of the Equipment and shall not interfere with, obstruct, or in any way disturb the Secured Party's rights and interests in the Equipment as granted under the applicable security agreement and by law. This subordination acknowledgement shall bind the Lessee and its successors and assigns and shall inure to the benefit of the Secured Party, its successors, and assigns.

The Debtor may cancel leases and enter new leases of the equipment in the ordinary course of its business. The Debtor shall give written notice to the secured party of that equipment that a new lease has been entered into for the equipment, which notice shall state the location of storage of the equipment, and shall provide a copy of the lease to the secured party.  Any new leases that the Debtor enters into shall include substantially the clause in this Article above.  In the event of a default as provided herein, the secured party shall be deemed to hold a security interest in the leases to the same extent it holds a security interest in the underlying equipment, and such leases will be deemed assigned to the secured party along with all rents, profits, proceeds, and other income or payments of any kind due and payable or to become due and payable to the Debtor as the result of any use or possession of the equipment.  All executory contracts or unexpired leases other than as specifically described herein will be deemed

to have been rejected by the Debtor. A Proof of Claim arising from the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court no later than 30 days after entry of the order confirming this Plan.

## ARTICLE 7: MEANS OF IMPLEMENTATION

7.1   <u>Vesting and Future Income</u>. On the Effective Date, all the Debtor's respective rights, title, and interest in and to all assets shall vest in the reorganized Debtor, and in accordance with section 1141 of the Bankruptcy Code.

7.2   <u>Future Management</u>. The Debtor will continue to be managed by Tamara and Roy Bryant, who have agreed to receive no compensation during the term of the Plan. Roy Bryant will receive a distribution to pay his income pass-through tax liability based on the Debtor's status as an S-Corporation and his ownership of the shares.

7.3   <u>Preservation and Settlement of Causes of Action</u>. In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the reorganized Debtor shall retain all causes of action, including without limitation causes of action that may exist under sections 542, 544 through 550 and 558 of the Bankruptcy Code or under similar state laws (collectively, the "Retained Actions"). The Debtor does not expect to assert any Retained Actions.

7.4   <u>Confirmation Pursuant to Section 1191(a) or 1191(b) of the Bankruptcy Code</u>. The Debtor's petition for relief elected to have subchapter V of Chapter 11 to apply to its case. The Debtor intends to seek confirmation of this Plan under Section 1191 of the Bankruptcy Code. If all voting classes accept the Plan, the Debtor will seek confirmation pursuant to Section 1191(a). If one or more voting classes do not accept the Plan, the Debtor will seek confirmation pursuant to Section 1191(b) as a non-consensual Plan. Under a non-consensual plan, the Debtor must demonstrate that the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired or has not accepted the plan.

7.5   <u>Distribution of Plan Payments</u>. If the Plan is confirmed pursuant to 11 U.S.C. 1191(a) or 1191(b), the Debtor will make all payments under this Plan notwithstanding the provisions of the Bankruptcy Code. If the Plan is approved as a non-consensual plan under 1191(b), the Debtor shall submit quarterly reports to the Subchapter V Trustee reporting all proceeds received, all expenses paid, and all proceeds distributed under the plan.

7.6   <u>Default.</u> For the avoidance of doubt, nothing contained in this section will limit or affect any remedies available to creditors under the Bankruptcy Code.

(a)   <u>Notice of Default</u>: If the Debtor fails to timely make a payment due to any class of this Plan, or if the Debtor fails to timely pay his Professional Fees, the relevant creditor may send a written notice of default to the Debtor. Notices of default must

be in writing and delivered by first class mail to: Bryant Portable Welding, Inc.,
P.O. Box 218, Parshall, ND 58770-0218.

(b) <u>Remedy</u>: Unless the Plan expressly provides otherwise, if the Debtor fails to cure
within 20 business days of such notice from a creditor, the relevant creditor shall
be entitled to file an affidavit of default and obtain stay relief with respect to any
collateral subject to its liens. All unsecured creditors shall be entitled to treat this
Plan as a contract and a default hereunder as a breach of contract by the Debtor.

## ARTICLE 8: GENERAL PROVISIONS

8.1    <u>Definitions</u>. The definitions and rules of construction set forth in Sections 101 and
102 of the Bankruptcy Code shall apply unless a term is otherwise defined in this Plan,
and as supplemented by the following definitions:

- "<u>Effective Date:</u>" The effective date of this Plan is the first business day following
the date that is 30 days after the confirmation order has become a final order. If,
however, a stay of the confirmation order is in effect on that date, the effective
date will be the first business day after the date on which the stay expires or is
otherwise terminated.

8.2    <u>Severability</u>. If any term of this Plan is held by the Bankruptcy Court to be invalid
or unenforceable, the determination will in no way limit or affect the enforceability and
operative effect of any other provision of this Plan.

8.3    <u>Binding Effect of this Plan</u>. The provisions of this Plan will be binding upon and
inure to the benefit of the Debtor, any holder of a claim or equity interest, their respective
predecessors, successors, assigns, agents, officers and directors and any other entity
affected by this Plan.

8.4    <u>Captions.</u> Article and Section captions used in this Plan are for convenience only
and will not affect the construction of this Plan.

8.5    <u>Controlling Effect.</u> Unless a bankruptcy statute or procedure is specified as
controlling by federal law, the laws of the State of North Dakota shall govern this Plan
and any agreements executed in connection with this Plan.

8.6    <u>Court to Retain Jurisdiction</u>. After the Effective Date, this Court shall retain and
have exclusive jurisdiction of all matters arising out of, and related to the Debtor's
bankruptcy case or this Plan pursuant to, and for purposes of, subsection 105(a) and
section 1142 of the Bankruptcy Code among other things, to: determine any and all
disputes relating to administrative expenses, claims and equity interests, including the
allowance and amount thereof; enforce or interpret the provisions of the Plan or the order
confirming the Plan; determine any and all disputes; consider and allow any and all
applications for compensation for professional fees; determine any and all applications,
motions, adversary proceedings and contested or litigated matters pending on the

Effective Date and arising in or related to the Plan; remedy any defect or omission or reconcile any inconsistency in this Plan; issue such orders, consistent with section 1142 of the Bankruptcy Code, as may be necessary to effectuate the consummation and full and complete implementation of this Plan; hear any other matter not inconsistent with the Bankruptcy Code; and enter a final decree closing the Debtor's bankruptcy case.

8.7    <u>Reporting Obligations</u>.  The Debtor will continue to file periodic disbursement reports when due until the case is closed, dismissed, or converted. The Debtor may request administrative closure of the case.

## ARTICLE 9: DISCHARGE

9.1    <u>Discharge Under Consensual Plan</u>. If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).  If the Plan is confirmed under 11 U.S.C. § 1191(a), the Debtor will file a Notice of Substantial Consummation not later than 14 days after the Plan is substantially consummated per 11 U.S.C. § 1183(c)(2).

9.2    <u>Discharge Under Non-Consensual Plan</u>. If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Respectfully Submitted,


Ahlgren Law Office, PLLC


Dated: March 25, 2024          <u>/e/Erik A. Ahlgren</u>
Erik A. Ahlgren
North Dakota Bar No. 09561
220 West Washington Ave, Ste 105
Fergus Falls, MN 56537
Office: 218-998-2775
<u>erik@ahlgrenlawoffice.net</u>

ATTORNEY FOR DEBTOR

Dated: March 25, 2024

Jeffrey Bryant (Mar 25, 2024 13:46 CDT)

Roy Jeffrey Bryant
Bryant Portable Welding, Inc.

EXHIBIT A

ESTIMATED LIQUIDATION VALUE

| ASSETS | | |
|---|---|---|
| | Cash on hand[1] | $13,500 |
| | Accounts receivable[2] | $10,000 |
| | Unsecured Equipment[3] | $25,115 |
| Total Assets | | $48,615. |
| | | |
| LESS | Chapter 7 trustee fees and expenses | $15,000 |
| LESS | Chapter 11 administrative expenses (Debtor's attorney and Subchapter V Trustee in excess of retainers) | $17,000 |
| Estimated Assets Distributable in Chapter 7 Liquidation | | 16,615 |
| Unsecured claims | | $1,505,626.40 |
| Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation: | | 1.1% |
| Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan: | | 5.6%<br>($100,000 less projected professional fees of $15,000 paid through the plan, divided by $1,505,626.40). |

---

[1] Estimated balance as of March 1, 2024
[2] Estimated balance as of March 1, 2024
[3] See Schedule 1

## Schedule 1 to Liquidation Analysis – Unsecured Equipment

| Equipment | Serial/Part Number | Date Aquired | Amount Paid | Liquidation Value |
|---|---|---|---|---|
| 2200 Honda Generator | EACT-1731705 | | | $500 |
| JBC-1 1 Ton Beam Clamps | 252710 | 10/23/2021 | $127.93 | |
| Dewalt 2" 2 Speed Mag drill Press | DWE1622K | 10/13/2021 | $859.99 | $200 |
| Bandsaw | 79653CLB103050 | 10/1/2021 | $3,972.03 | $1,500 |
| Air Compressor | | 10/4/2021 | $7,000.00 | $6,500 |
| Air Sprayer | | 10/4/2021 | $4,500.00 | $1,200 |
| Air Sprayer | | 10/4/2021 | $3,500.00 | $1,200 |
| Blasting Pot | | 10/4/2021 | $5,000.00 | $2,200 |
| Flame Heater Painting Hootch | HTR KRSN 190K DW | 10/9/2021 | $506.76 | |
| Honda 3000 Watt Generator | EZGF-1887045 | 10/21/2021 | $2,471.43 | $900 |
| Compressor Handle/Extension/Coupler/Air Hose | | 11/6/2021 | $373.75 | |
| Climate Control Valve | 4411 | 12/20/2021 | $246.42 | |
| Srock Support Stand | 6229 | 9/27/2021 | $450.00 | |
| Torque Wrench | 200-1000lb 8447W | 3/21/2022 | $1,567.99 | $600 |
| Roll Out Wheel | | 4/20/2022 | $1,648.35 | $1,840 |
| Crystal Gauge | SN902938 | 5/3/2022 | $1,620.00 | outdated |
| Shocker Offset Hitch | | 5/6/2022 | $1,107.75 | $675 |
| L202 Dual Beam Alignment Laser - GL202 | GL202 | 8/23/2022 | $1,160.00 | broken |
| Roller Ball Bolt | Roller Head | 9/10/2022 | $851.30 | $850 |
| Hole Cutter - HC300 115V | HC300 76777 | 9/12/2022 | $2,148.78 | $1,200 |
| Fluid Hose Ass. | | 9/27/2022 | $1,476.53 | stolen |
| Air Heater | MH-125-OFR | 11/8/2022 | $1,219.00 | broken |
| Engine Crane 1.5 Ton | 7916021 | 11/8/2022 | $1,100.00 | $600 |
| Rod Box | | 10/31/2022 | $650.00 | $650 |
| Honda 10k Generator | | 11/15/2022 | $4,500.00 | $4,500 |
| | | | | |
| | | | $48,058.01 | $25,115 |

Exhibit B

# Cash Flow Projection -2024

| Starting date | Feb-24 |
|---|---|
| Cash balance alert minimum | 5,000 |

| | Beginning | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash on hand (beginning of month)** | 13,500 | | | 16,239 | 19,843 | 20,110 | 28,626 | 23,257 | 27,889 | 32,520 | 29,902 | 27,283 | 22,665 | |

| CASH RECEIPTS | | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lease Revenues | | | | 9,000 | 9,000 | 17,250 | 19,250 | 17,250 | 17,250 | 12,000 | 10,000 | 8,000 | 5,000 | 124,000 |
| | | | | | | | | | | | | | | 0 |
| **TOTAL CASH RECEIPTS** | | 0 | 0 | 9,000 | 9,000 | 17,250 | 19,250 | 17,250 | 17,250 | 12,000 | 10,000 | 8,000 | 5,000 | 124,000 |
| **Total cash available** | 13,500 | 0 | 0 | 25,239 | 28,843 | 37,360 | 47,876 | 40,507 | 45,139 | 44,520 | 39,902 | 35,283 | 27,665 | |

| CASH PAID OUT | | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Insurance (other than health) | | | | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 3,775 |
| Bravera | | | | 4,018 | 4,018 | 4,018 | | | | | | | | 12,055 |
| Debt Services | | | | 3,338 | 3,338 | | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 85,363 |
| Unsecured Creditor | | | | | | | 10,000 | | | | | | 10,000 | 20,000 |
| Quarterly Income Tax Deposit | | | | | | | 2,000 | | | 2,000 | | | 2,000 | 6,000 |
| Miscellaneous | | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 10,000 |
| **SUBTOTAL** | | 0 | 0 | 5,396 | 8,734 | 8,734 | 24,619 | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | 137,193 |
| CASH PAID OUT | | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Total |
| **Cash on hand (end of month)** | 13,500 | 0 | 0 | 19,843 | 20,110 | 28,626 | 23,257 | 27,889 | 32,520 | 29,902 | 27,283 | 22,665 | 3,046 | |

Exhibit B

# Cash Flow Projection -2025

| | |
|---|---|
| Starting date | Jan-25 |
| Cash balance alert minimum | 5,000 |

| | Beginning | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash on hand (beginning of month) | 3,046 | 3,046 | 6,928 | 11,559 | 11,941 | 16,572 | 23,204 | 17,835 | 24,467 | 31,098 | 28,480 | 25,861 | 21,243 | |

| CASH RECEIPTS | | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lease Revenues | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | 19,250 | 19,250 | 12,000 | 10,000 | 8,000 | 5,000 | 178,000 |
| | | | | | | | | | | | | | | 0 |
| TOTAL CASH RECEIPTS | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | 19,250 | 19,250 | 12,000 | 10,000 | 8,000 | 5,000 | 178,000 |
| Total cash available | 3,046 | 19,546 | 24,178 | 26,559 | 29,191 | 35,822 | 42,454 | 37,085 | 43,717 | 43,098 | 38,480 | 33,861 | 26,243 | |

| CASH PAID OUT | | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Insurance (other than health) | | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 4,530 |
| Debt Services | | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 134,892 |
| Unsecured Creditor | | | | | | | 10,000 | | | | | 10,000 | 20,000 |
| Quarterly Income Tax Deposit | | | | 2,000 | | | 2,000 | | | 2,000 | | | 2,000 | 8,000 |
| Miscellaneous | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| SUBTOTAL | | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | 179,422 |
| CASH PAID OUT | | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Total |
| Cash on hand (end of month) | 3,046 | 6,928 | 11,559 | 11,941 | 16,572 | 23,204 | 17,835 | 24,467 | 31,098 | 28,480 | 25,861 | 21,243 | 1,624 | |

Exhibit B

# Cash Flow Projection - 2026

| | |
|---|---|
| Starting date | Jan-26 |
| Cash balance alert minimum | 5,000 |

| | Beginning | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash on hand (beginning of month) | 1,624 | 1,624 | 5,506 | 10,137 | 10,519 | 15,150 | 21,782 | 16,413 | 23,045 | 29,676 | 27,057 | 24,439 | 19,820 | |

| CASH RECEIPTS | | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lease Revenues | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | 19,250 | 19,250 | 12,000 | 10,000 | 8,000 | 5,000 | 178,000 |
| | | | | | | | | | | | | | | 0 |
| TOTAL CASH RECEIPTS | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | 19,250 | 19,250 | 12,000 | 10,000 | 8,000 | 5,000 | 178,000 |
| Total cash available | 1,624 | 18,124 | 22,756 | 25,137 | 27,769 | 34,400 | 41,032 | 35,663 | 42,295 | 41,676 | 37,057 | 32,439 | 24,820 | |

| CASH PAID OUT | | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Insurance (other than health) | | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 4,530 |
| Debt Services | | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 134,892 |
| Unsecured Creditor | | | | | | | 10,000 | | | | | | 10,000 | 20,000 |
| Quarterly Income Tax Deposit | | | | 2,000 | | | 2,000 | | | 2,000 | | | 2,000 | 8,000 |
| Miscellaneous | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| SUBTOTAL | | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | 179,422 |
| CASH PAID OUT | | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Total |
| Cash on hand (end of month) | 1,624 | 5,506 | 10,137 | 10,519 | 15,150 | 21,782 | 16,413 | 23,045 | 29,676 | 27,057 | 24,439 | 19,820 | 202 | |

Exhibit B

# Cash Flow Projection -2027

| Starting date | Jan-27 |
|---|---|
| Cash balance alert minimum | 5,000 |

| | Beginning | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash on hand (beginning of month) | 202 | 202 | 4,083 | 13,500 | 13,881 | 18,513 | 25,144 | 19,776 | 26,407 | 33,039 | 30,420 | 27,802 | 23,183 | |

| CASH RECEIPTS | | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lease Revenues | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | 19,250 | 19,250 | 12,000 | 10,000 | 8,000 | 5,000 | 178,000 |
| | | | | | | | | | | | | | | 0 |
| TOTAL CASH RECEIPTS | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | 19,250 | 19,250 | 12,000 | 10,000 | 8,000 | 5,000 | 178,000 |
| Total cash available | 202 | 16,702 | 21,333 | 28,500 | 31,131 | 37,763 | 44,394 | 39,026 | 45,657 | 45,039 | 40,420 | 35,802 | 28,183 | |

| CASH PAID OUT | | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Insurance (other than health) | | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 4,530 |
| Debt Services | | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 134,892 |
| Unsecured Creditor | | | | | | | 10,000 | | | | | | 10,000 | 20,000 |
| Quarterly Income Tax Deposit | | | | 2,000 | | | 2,000 | | | 2,000 | | | 2,000 | 8,000 |
| Miscellaneous | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| SUBTOTAL | | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | 179,422 |
| CASH PAID OUT | | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Total |
| Cash on hand (end of month) | 202 | 4,083 | 8,715 | 13,881 | 18,513 | 25,144 | 19,776 | 26,407 | 33,039 | 30,420 | 27,802 | 23,183 | 3,565 | |

Exhibit B

# Cash Flow Projection - 2028

| | |
|---|---|
| Starting date | Jan-28 |
| Cash balance alert minimum | 5,000 |

| | Beginning | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash on hand (beginning of month) | 3,565 | 3,565 | 7,446 | 13,500 | 13,881 | 18,513 | 25,144 | 19,776 | 26,407 | 33,039 | 30,420 | 27,802 | 23,183 | |

| CASH RECEIPTS | | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lease Revenues | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | 19,250 | 19,250 | 12,000 | 10,000 | 8,000 | 5,000 | 178,000 |
| | | | | | | | | | | | | | | 0 |
| TOTAL CASH RECEIPTS | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | 19,250 | 19,250 | 12,000 | 10,000 | 8,000 | 5,000 | 178,000 |
| Total cash available | 3,565 | 20,065 | 24,696 | 28,500 | 31,131 | 37,763 | 44,394 | 39,026 | 45,657 | 45,039 | 40,420 | 35,802 | 28,183 | |

| CASH PAID OUT | | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Insurance (other than health) | | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 378 | 4,530 |
| Debt Services | | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 134,892 |
| Unsecured Creditor | | | | | | | 10,000 | | | | | | 10,000 | 20,000 |
| Quarterly Income Tax Deposit | | | | 2,000 | | | 2,000 | | | 2,000 | | | 2,000 | 8,000 |
| Miscellaneous | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| SUBTOTAL | | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | 179,422 |
| CASH PAID OUT | | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Total |
| Cash on hand (end of month) | 3,565 | 7,446 | 12,078 | 13,881 | 18,513 | 25,144 | 19,776 | 26,407 | 33,039 | 30,420 | 27,802 | 23,183 | 3,565 | |

Exhibit B

# Cash Flow Projection -2029

| | |
|---|---|
| Starting date | Jan-29 |
| Cash balance alert minimum | 5,000 |

| | Beginning | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash on hand (beginning of month) | 3,565 | 3,565 | 7,446 | 12,078 | 12,459 | 17,091 | 23,722 | | | | | | | |

| | | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 | Jun-30 | Jun-31 | Jun-32 | Jun-33 | Jun-34 | Jun-35 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH RECEIPTS** | | | | | | | | | | | | | | |
| Lease Revenues | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | | | | | | | 104,500 |
| | | | | | | | | | | | | | | 0 |
| **TOTAL CASH RECEIPTS** | | 16,500 | 17,250 | 15,000 | 17,250 | 19,250 | 19,250 | | | | | | | 104,500 |
| **Total cash available** | 3,565 | 20,065 | 24,696 | 27,078 | 29,709 | 36,341 | 42,972 | | | | | | | |

| | | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 | Jun-30 | Jun-31 | Jun-32 | Jun-33 | Jun-34 | Jun-35 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH PAID OUT** | | | | | | | | | | | | | | |
| Insurance (other than health) | | 378 | 378 | 378 | 378 | 378 | 378 | | | | | | | 2,265 |
| Debt Services | | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | 11,241 | | | | | | | 67,446 |
| Unsecured Creditor | | | | | | | 10,000 | | | | | | | 10,000 |
| Quarterly Income Tax Deposit | | | | 2,000 | | | 2,000 | | | | | | | 4,000 |
| Miscellaneous | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | | | | | | | 6,000 |
| **SUBTOTAL** | | 12,619 | 12,619 | 14,619 | 12,619 | 12,619 | 24,619 | | | | | | | 89,711 |
| **CASH PAID OUT** | | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jun-25 | Jun-26 | Jun-27 | Jun-28 | Jun-29 | Jun-30 | Total |
| **Cash on hand (end of month)** | 3,565 | 7,446 | 12,078 | 12,459 | 17,091 | 23,722 | 18,354 | | | | | | | |

EXHIBIT C

HISTORICAL FINANCIAL PERFORMANCE

| 2020 | |
|---|---|
| Gross Revenues | 435,950 |
| Total Expenses | 195,023 |
| Net Income | 240,927 |
| | |
| 2021 | |
| Gross Revenues | 1,808,675 |
| Total Expenses | 2,120,055 |
| Net Income | (309,359) |
| | |
| 2022 | |
| Gross Revenues | 3,518,396 |
| Total Expenses | 3,592,023 |
| Net Income | (73,627) |
| | |
| 2023 | |
| Gross Revenues | 801,582 |
| Total Expenses | 975,766 |
| Net Income | (172,161) |
| | |